REGAN, Judge.
Plaintiff, Colonial Dairy Farms, Inc., instituted this suit against the defendant, the Texas & Pacific Railway Company, endeavoring to recover the sum of $5,500, representing the value of twenty cows[1], owned by plaintiff and killed by defendant’s freight train, which destroyed, them as they wandered along the railroad track near Taft, Louisiana.
Defendant answered and asserted that its agents were free from negligence in operating the train; in the alternative, it pleaded plaintiff’s contributory negligence in failing to close a gate leading to the fenced in right-of-way of the railroad.
From a judgment awarding plaintiff $4,-950, the defendant has prosecuted this appeal.
The relatively undisputed facts are these:
In the morning of July 25, 1956 at about 6 a. m., sixty cows which had just been milked by plaintiff’s employees were turned out to pasture and permitted to wander along a lane toward defendant’s railroad track which crossed plaintiff’s property. Pasture land exists on either side of the track, which is completely fenced in. There are also gates on either side of the roadway connecting plaintiff’s pastures. In the general area of where the railroad intersects plaintiff’s property, there are no curves in the track.
*217 Although the gate at the crossing was usually closed and secured by a chain, it obviously was open, for some fifty cows walked upon the track and began moving in a westward direction.
Simultaneously, defendant’s train, which was moving westward at a speed of 45 miles per hour from Hahnville toward Killona, reached this crossing and struck the herd, and before its forward motion could be stopped, it had traveled a little less than one half mile, killing seventeen cows and injuring three. Since two recovered completely, plaintiff actually lost eighteen cows as a result of the accident.
It is conceded by both litigants that these animals were valued at approximately $275 per head.
The only fact that is seriously disputed is whether “patches” of fog prevailed on this July morning, which caused poor visibility to exist near plaintiff’s farm when the accident occurred. Plaintiff asserts that the weather was clear and visibility good, which, if proven, would establish the defendant’s crew’s negligence in failing to observe the cows in sufficient time to avoid killing them.
S. J. McClendon, plaintiff’s manager who resides about one-half mile from the railroad’s track, asserted that the weather was clear that morning, which, he explained, was borne out by the fact that he saw the train drawing to a stop at the crossing through his kitchen window. He then drove to the scene of the accident, and in order to satisfy himself as to existing conditions, he looked down the track in both directions and was able to clearly see railroad signals that were approximately 24 of a mile removed from where he stood.
John Bruce, employed as a farmhand by plaintiff at the time of the accident, testified that the morning was hazy and there were light fog pockets in the area; however, immediately before the accident occurred he could see the train moving slowly toward the crossing from a distance one half mile removed from the track. He stated that visibility was clear that morning except that light fog patches in areas rendered it hazy.
Edward Dickerson, a section foreman employed by the defendant, but whose testimony favors the plaintiff on this disputed point, resides in Killona, some two miles west of the scene of the accident. He asserted that the morning was clear and that the visibility was good in his neighborhood. He was on his porch relaxing when the collision occurred.
In order to rebut this testimony, the defendants, as is usual in cases of this nature, produced the train crew who uniformly testified that the brakes of the train had been thoroughly checked before it left New Orleans and again, before it left Avondale. This testimony was fully corroborated by the railroad employees, who were charged with the responsibility of checking the brakes. The crew members then related that they initially passed through patches of fog in Ama, Louisiana, which is several miles east of the situs of the accident, and moments before they reached the plaintiff’s crossing, they again moved through a patch of fog which reduced the crew’s visibility to about five feet. They said they emerged from the fog when they were approximately 400 feet removed from the first group of cattle roaming along the tracks and they were then too close to the animals to stop before they were slaughtered by the locomotive. From the moment that the engineer saw the cattle until the train was actually stopped by him, it had traveled about a half mile.
Predicated on the foregoing evidence[2], the trial judge reasoned that the plaintiff *218 had satisfactorily established with that certainty [3] that the law requires that the weather was clear and visibility good on the morning of the accident; therefore, he concluded that the defendant’s crew was negligent in failing to observe plaintiff’s cattle in sufficient time to avoid their destruction.
 The only question which this appeal has posed for our consideration is whether that finding is so erroneous and unsupported by the. evidence as to warrant a reversal by us.[4]
Our examination of the record convinces us that no manifest error appears therein as a result of this conclusion.
We are also of the opinion that the defendant’s alternative plea of contributory negligence is untenable. It may be true that the plaintiff’s employees were at fault in failing to secure the gate which separated the pasture from the railroad track; however this negligence was the remote and not the proximate cause of the accident. The legal or proximate cause thereof was the failure of defendant’s crew to maintain a proper lookout and observe the cattle roaming along the tracks in time to avoid the accident. The law imposes a duty upon individuals to observe impending danger, when possible, and then to avert injury; a failure to do so constitutes negligence when the peril could have been apparent to the one causing the injury had he been maintaining proper vigilance.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Since two cows that were struck completely recovered, plaintiff’s claim was reduced by $550, leaving a total of $4950.

. Weather reports, emanating from various weather stations, were also introduced into evidence by plaintiff over defendant’s objection, which reflected that the weather was clear and the visibility was good in the vicinity of these stations. However, the station located nearest the situs of the accident was 12 or 13 miles *218 removed therefrom and therefore we find little, if any, probative value therein and have accordingly discounted them in this opinion .

. It is conceded that a civil case need not be proved beyond a reasonable doubt; therefore, the civil law concerns itself with reasonable probabilities rather than absolute certainties. Ellzey v. Fidelity & Casualty Company of New York, La.App., 123 So.2d 593 (1960).

. Plaintiff argues that defendant carries the burden of proving its freedom from negligence in conformity with the provisions of LSA-R.S. 45:504, which provides :
“In suits against railroad companies for the loss of stock killed or injured by them, it is sufficient, in order for the plaintiff and owner to recover, to prove the killing or injury, unless it is shown by the defendant company that the killing or injury was not the result of fault or carelessness on their part or the negligent or indifferent running or management of their locomotive or train.”
However, in this instance, the railroad track was fenced, which relieves the defendant in this case from carrying the initial burden of proof under the provision of LSA-R.S. 45:503, which provides in part:
“Railroad companies shall not be responsible for the killing or injury of stock if their line of track is fenced in and kept in good order, and if they have erected and maintained, in good order, suitable cattle guards at crossings.”